NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DUSTIN KEITH BROWN, *Appellant.*

No. 1 CA-CR 25-0157

FILED 04-30-2026

Appeal from the Superior Court in Yavapai County
No. S1300CR202300164
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph E. Begun
*Counsel for Appellee*

The Law Office of Michael Alarid III, PLLC, Phoenix
By Michael Alarid, III
*Co-Counsel for Appellant*

The Law Office of Elizabeth Mullins, PLLC, Phoenix
By Elizabeth Mullins
*Co-Counsel for Appellant*

―――――――――――――――

## MEMORANDUM DECISION

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Angela K. Paton joined.

―――――――――――――――

**P E R K I N S**, Judge:

¶1　　　　Dustin Keith Brown appeals his conviction and sentence on one count of stalking, a Class-3 felony. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Brown engaged in the conduct giving rise to this stalking conviction over the course of about ten days in early 2023. Brown, 48 at the time, made romantic overtures to Rebecca (a pseudonym), a 17-year-old convenience store clerk at a gas station he had been patronizing for a while. Rebecca rebuffed his advances, but feeling deeply disturbed, reached out to local police for advice.

¶3　　　　A few days later, Rebecca found a hand-written letter on her windshield that called her degrading names, wished her death by cancer, and, after some sexual commentary, suggested Rebecca take her own life and offered means to assist her in doing so. Rebecca immediately turned the letter over to the police, and Brown later admitted to authoring it. The next day, Rebecca arrived at work to find Brown parked at one of the gas pumps. Soon thereafter, when returning home from a family dinner, Rebecca found Brown parked in the dark in front of her house and immediately called 911. When questioned by law enforcement, Brown claimed he had gotten lost on the way back from the gym. When asked why he parked in front of Rebecca's house, he retorted he had parked down the block. Taking this as an admission, officers arrested Brown.

¶4　　　　Law enforcement executed a limited-in-scope search warrant for parts of Brown's home and seized, among other things, boxes of GPS trackers, some empty. This prompted officers to check Rebecca's vehicle and find two GPS trackers affixed to the undercarriage. Further investigation into Brown's phone data showed he had been tracking Rebecca's location and was near her home at the time Rebecca so claimed. The State indicted Brown on a Class-3 stalking charge under Arizona Revised Statutes Section 13-2923(A)(2)(a).

**¶5**          Before trial, the State moved to introduce Brown's prior stalking conviction as other acts evidence to show he acted with "intent, knowledge, had the opportunity, and took steps to plan his crime." The court held an evidentiary hearing and concluded that the evidence was admissible. Brown moved to suppress the admission of the GPS devices and boxes seized during the search of his home and any data found on any of his electronic devices. The court held another evidentiary hearing and denied the motion.

**¶6**          At trial, Brown requested jury instructions on harassment and Class-5 stalking as lesser-included charges of Class-3 stalking. The court included Class-5 stalking but declined to provide the harassment instruction. After a four-day trial, the jury found Brown guilty of the Class-3 stalking as charged and found three aggravators. After balancing the mitigating factors, the court imposed an aggravated 15.5 year sentence and a lifetime injunction against contact with Rebecca.

**¶7**          At sentencing, Brown's trial counsel orally moved to withdraw, which the court granted on the condition that counsel file a notice of appeal first. Trial counsel failed to do so. Newly retained appellate counsel discovered the omission and moved the court for leave to file a late appeal. The court granted the motion, and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶8**          On appeal, Brown challenges the superior court's (1) admission of Rule 404(b) other acts evidence, (2) denial of his motion to suppress, and (3) refusal to instruct the jury on harassment as a lesser-included offense of Class-3 stalking.

## I.      Admission of Rule 404(b) Other Acts Evidence

**¶9**          Brown claims the superior court erred in admitting his prior stalking conviction because it was irrelevant and unfairly prejudicial propensity evidence under Rule 404(b). In that case, Brown stalked a former girlfriend by attaching a GPS tracker to her vehicle and then claimed to be lost when police confronted him for being near her home.

**¶10**          We review the court's admission of Rule 404(b) evidence for an abuse of discretion. *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20 (1999). Rule 404 bars admission of "other crimes, wrongs, or acts" to prove a defendant's propensity to commit the crime charged, Ariz. R. Evid. 404(b)(1), but allows admission for a proper purpose like proving "motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," Ariz. R. Evid. 404(b)(2). Before admission, the court must find that the proponent of the evidence (1) proved by clear and convincing evidence the actor committed the alleged prior act, (2) offered the evidence for a proper purpose, and (3) the evidence's probative value is not substantially outweighed by the potential for unfair prejudice under Rule 403. *State v. Vigil*, 195 Ariz. 189, 191, ¶ 14 (App. 1999). The more probative the evidence, the less likely it is to be unfairly prejudicial by having "an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *State v. Strong*, 258 Ariz. 184, 210, ¶ 112 (2024) (cleaned up). And the evidence must be relevant, i.e., tending to make a material fact more or less probable than it would be otherwise. Ariz. R. Evid. 401. If the relevance is based on "similarity of the crimes . . . the other crime must be similar to the offense charged and the similarities must exist when normally differences would be expected to be found." *Van Adams*, 194 Ariz. at 415, ¶ 20 (cleaned up).

¶11 Here, the State alleged that Brown placed GPS trackers on Rebecca's car and claimed to be lost on his way back from the gym when police detained him. The court held an evidentiary hearing that does not appear to have been recorded or transcribed. Because the burden is on Brown to ensure the record supporting his claims on appeal is preserved at trial, we must presume "the missing portions of the record . . . support the action of the trial court." *State v. Geeslin*, 223 Ariz. 553, 554, ¶ 5 (2010) (cleaned up). That said, the evidence presented at the hearing is part of the record.

¶12 The court made a detailed ruling, finding clear and convincing evidence Brown used GPS trackers to stalk someone and "being lost" as a cover story. It also found the State offered the acts for the proper purposes of showing "motive and opportunity[, and] . . . lack of mistake or accident in both the use of tracking devices and [using the same "being lost" cover story]." Lastly, the court found the evidence was relevant to the proper purpose, highly probative, and that a limiting instruction would prevent an improper propensity conviction. The court then instructed the jury it could not consider the acts as character evidence or that Brown committed the charged offenses in conformity with a character trait. During closing arguments, the State emphasized the limited purpose of the other acts and asked the jury not to infer propensity.

¶13 On this record, the court correctly admitted the other acts under Rule 404(b). And the State did not use the evidence in an impermissible way, so Brown has shown no error.

## II. Denial of the Motion to Suppress

¶14 Brown challenges the denial of his motion to suppress the evidence obtained pursuant to a search warrant he insists was overbroad and lacked the particularity and specificity required by the United States and Arizona Constitutions. Relevant here, he challenged the introduction of his GPS devices and related boxes, as well as any data from any of his seized electronic devices. He argues that except for one item category the warrant failed to clearly limit what law enforcement could search for and seize, thus giving officers impermissible discretion. Brown also claims police had no probable cause to seize his GPS devices because, at the time the warrant issued, there was no indication such devices were being used in connection with the alleged offenses. Brown did not offer any argument based on the Arizona Constitution, so we consider the argument waived and do not address it. *See* ARCAP 13(a)(7) (parties must develop meaningful arguments on appeal with appropriate references to the record and relevant legal authority).

¶15 We review the denial of a motion to suppress for an abuse of discretion, considering only evidence presented at the suppression hearing and viewing the facts in the light most favorable to sustaining the trial court's ruling. *State v. Valenzuela*, 239 Ariz. 299, 301–02, ¶¶ 3, 9 (2016) (cleaned up). We must affirm the trial court's ruling if legally correct for any reason. *State v. Boteo-Flores*, 230 Ariz. 551, 553, ¶ 7 (App. 2012).

¶16 The Fourth Amendment of the United States Constitution protects against "unreasonable searches and seizures," so evidence obtained in violation thereof is generally inadmissible at a criminal trial. *Valenzuela*, 239 Ariz. at 302, ¶ 10. Thus, when the government infringes on a person's reasonable expectation of privacy, it must do so pursuant to a warrant supported by probable cause. *State v. Mitcham*, 258 Ariz. 432, 437, ¶ 15 (2024). And the warrant must describe with particularity the things to be seized. *State v. Roark*, 198 Ariz. 550, 552, ¶ 8 (App. 2000). Whether a warrant is sufficiently particular is a legal issue we review *de novo*. *Id.* at ¶ 6.

¶17 Warrants are presumed valid, so Brown had the burden to prove otherwise. *State v. Crowley*, 202 Ariz. 80, 83, ¶ 7 (App. 2002). And "evidence seized by law enforcement officers acting in good faith, but in reliance on a faulty warrant, should not be suppressed," except "when a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and when a warrant is so facially deficient that the executing officers cannot reasonably

presume it to be valid." *State v. Dean*, 241 Ariz. 387, 389, ¶ 6 (App. 2017) (cleaned up) (quoting *United States v. Leon*, 468 U.S. 897, 922–23 (1984)).

¶18　　　To determine if an officer could rely in good faith on the validity of a warrant, we apply a three-prong test:

> (1) whether probable cause existed to seize all items of a particular type described in the warrant, (2) whether the warrant set out objective standards by which executing officers could differentiate items subject to seizure from those which were not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Id.* at 389–90, ¶ 7 (cleaned up) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)).

¶19　　　The warrant authorized seizure of: "Any cellular phones, pagers, computers, digital recording/photography devices, digital or computerized planners or address books, or other devices which may contain information pertaining to the case . . . to include perusal of the contents thereof." The next paragraph authorized access to "[a]ll data or information in the devices."

¶20　　　Under *Spilotro* prong one, the *any* electronic device language brought GPS devices within the scope of the warrant's probable cause. The lead detective admitted law enforcement was not looking for GPS trackers when requesting the warrant but sought to seize electronic devices because officers knew Brown had found Rebecca's house and expected electronic devices to have played a role. When the detective executed the warrant and found the GPS trackers, he knew, based on training and experience, they would be relevant to the investigation and within the scope of the warrant.

¶21　　　Under *Spilotro* prong two, the warrant was specific because it limited seizure only to *relevant* devices and explicitly authorized access to the data on them. Using "any" or "other" does not render a warrant fatally general. *State v. Lavers*, 168 Ariz. 376, 384 (1991). The warrant described the challenged categories in sufficient detail and was not overbroad. *See Dean*, 241 Ariz. at 389, ¶ 7.

¶22　　　Under *Spilotro* prong three, law enforcement likely could not have been more particular by listing GPS trackers. While preparing the warrant, law enforcement researched Brown and learned he had a prior stalking charge. But it is not clear that officers were aware that the earlier

stalking involved GPS trackers. The requirement for particularity should not "be confused with a demand for precise ex ante knowledge of the location and content of evidence related to the suspected violation . . . [but rather] whether it was reasonable to provide a more specific description of the items at that juncture of the investigation." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004).

**¶23**          Even if we were to assume, for the sake of argument, that the warrant fell short under *Spilotro*, the detective's testimony showed that law enforcement relied on the warrant in good faith and attempted to comply with its limitations by not searching large parts of Brown's house.

**¶24**          Brown failed to establish error.

### III.    Denial of the Harassment Instruction

**¶25**          Brown claims the court erred by denying his request to instruct the jury on Section 13-2921 harassment as a lesser-included offense of Class-3 stalking under Section 13-2923(A)(2)(a). He argues that even if harassment was not a lesser-included offense on the facts of this case, there was sufficient evidence to require giving the instruction.

**¶26**          "Whether one offense is included within another offense is an issue of statutory construction, which we review *de novo*." *State v. Agueda*, 253 Ariz. 388, 389–90, ¶ 11 (2022). We review the court's denial of a requested lesser-included jury instruction for an abuse of discretion. *State v. Price*, 218 Ariz. 311, 316, ¶ 21 (App. 2008). But even if denying the instruction was error, we will affirm if that error was harmless beyond a reasonable doubt. *See State v. White*, 144 Ariz. 245, 247 (1985).

**¶27**          We note that although Brown's brief describes harassment as a "lesser-included" offense, his argument suggests it was a "necessarily included" one. But "necessarily included" is not always the same as "lesser included." *State v. Dugan*, 125 Ariz. 194, 195 (1980). The court must instruct the jury on "all offenses necessarily included in the offense charged" upon "request by any party and if supported by the evidence." Ariz. R. Crim. P. 21.4(a)(1). To be "necessarily included," an offense must be "lesser included," and sufficient evidence must support giving the instruction, i.e., a reasonable jury could conclude that on the facts of the case the State has proven only the elements of the lesser offense. *State v. Wall*, 212 Ariz. 1, 3, ¶ 14 (2006). An offense is "lesser included" when the greater offense requires "each element of the lesser offense plus one or more additional elements not required by the lesser offense." *Agueda*, 253 Ariz. at 390, ¶ 12

(applying the same-element test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

¶28　　　　Here, the court declined to give the harassment instruction, finding that because one could commit stalking without committing harassment, the elements of the two offenses did not necessarily align, and harassment was not a lesser-included offense in this case. At the same time, the court agreed to instruct on the lesser-included offense of Class-5 stalking under Section 13-2923(A)(1)(b)(i).

¶29　　　　We need not decide whether Brown was entitled to an instruction. By convicting Brown of the greater Class-3 stalking charge, which required establishing Rebecca's fear of death, A.R.S. § 13-2923(A)(2)(a), the jury necessarily rejected the available lesser-included Class-5 stalking charge, which required establishing merely emotional distress or fear of injury, A.R.S. § 13-2923(A)(1)(b)(i). The jury thus necessarily would have rejected the harassment standard that Brown's conduct "seriously alarmed, annoyed, humiliated, or mentally distressed" Rebecca. A.R.S. § 13-2921(E). If failing to provide the harassment instruction was error, it was harmless. *See White*, 144 Ariz. at 247 (conviction "of the highest offense, to the exclusion of the immediately lesser-included offense . . . necessarily reject[s] all other lesser-included offenses").

## CONCLUSION

¶30　　　　We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:　　　　JR

8