#27205-a-DG

**2015 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                        Plaintiff and Appellant,

    v.

ERIC E. MEDICINE,                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

KELLY MARNETTE
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                                              and appellant.


ROBERT J. ROHL of
DeMersseman Jensen
  Tellinghuisen & Huffman, LLP
Rapid City, South Dakota

    and

RANDAL E. CONNELLY
Rapid City, South Dakota                      Attorneys for defendant
                                              and appellee.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 20, 2015
OPINION FILED **06/10/15**

#27205

GILBERTSON, Chief Justice

[¶1.]     The State appeals the circuit court's order granting Eric E. Medicine's motion in limine and motion to suppress blood evidence obtained by law enforcement after initiating a traffic stop.  The arresting officer first informed Medicine that he had impliedly consented to a blood draw by virtue of operating a vehicle in South Dakota, but then asked if Medicine consented to the blood draw.  Medicine consented.  The State asserts the totality of the circumstances supports a conclusion that Medicine's consent was voluntary.  We affirm.

**Facts and Procedural History**

[¶2.]     On May 3, 2014, at approximately 8:06 p.m., Rapid City Police Officer Robert Neisen initiated a traffic stop of a vehicle driven by Medicine.  After administering field sobriety tests, Officer Neisen arrested Medicine for driving under the influence.[1]  Officer Neisen read the Rapid City DUI advisement card to Medicine.  The advisement card states:

> 1.     I have arrested you for a violation of SDCL 32-23-1.
>
> 2.     SDCL 32-23-10 provides that any person who operates a vehicle in this state has consented to the withdrawal of blood or other bodily substance and chemical analysis.
>
> 3.     I request that you submit to the withdrawal of your _____ (blood, breath, bodily substance).
>
> 4.     You have the right to an additional chemical analysis by a technician of your own choosing, at your own expense.
>
> 5.     Do you consent to the withdrawal of your _____ (blood, breath, bodily substance)?

---

1.     The validity of neither the stop nor the arrest is in dispute.

-1-

After Officer Neisen finished reading the advisement card, Medicine replied affirmatively. Medicine did not verbally object to, or physically resist, having his blood drawn at the Pennington County jail.[2]

[¶3.]        Medicine subsequently filed a motion in limine and a motion to suppress the blood test, arguing that his consent was not voluntary. The circuit court agreed, granted Medicine's motion in limine, and suppressed the blood test.

[¶4.]        The State appeals, raising one issue: Whether Medicine's consent was voluntary.

### Standard of Review

[¶5.]        We recently restated the standard of review applicable to this case.

> "We traditionally review a [circuit] court's decision to suppress evidence under an abuse of discretion standard." *State v. Muller*, 2005 S.D. 66, ¶ 12, 698 N.W.2d 285, 288. However, "[t]he Fourth Amendment demonstrates a 'strong preference for searches conducted pursuant to a warrant[.]'" *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527 (1983)). Because "the police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable-cause determination to issue a warrant is less than that for warrantless searches[,]" *id.*, we review a motion to suppress evidence obtained in the absence of a warrant de novo, *see State v. Stanga*, 2000 S.D. 129, ¶ 8, 617 N.W.2d 486, 488 (citing *Ornelas*, 517 U.S. at 699, 116 S. Ct. at 1663). Thus, we review the circuit court's factual findings for clear error but "give no deference to the circuit court's conclusions of law[.]" *Gartner v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850.

*State v. Walter*, 2015 S.D. 37, ¶ 6, ___ N.W.2d ___ (footnote omitted).

---

2.    The parties do not dispute the factual question of whether or not Medicine gave consent; rather, they dispute whether that consent was voluntary.

### Analysis and Decision

[¶6.]       The Fourth Amendment to the United States Constitution, as well as Article VI, § 11, of the South Dakota Constitution, protects the individual from "unreasonable searches and seizures[.]"  This protection "requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person."  *State v. Fierro*, 2014 S.D. 62, ¶ 15, 853 N.W.2d 235, 240 (quoting *State v. Smith*, 2014 S.D. 50, ¶ 15, 851 N.W.2d 719, 724) (internal quotation mark omitted).  If the State fails to obtain a warrant prior to conducting a search, "it is the State's burden to prove that the search at issue falls within a well-delineated exception to the warrant requirement."  *Id.* (citing *State v. Hess*, 2004 S.D. 60, ¶ 23, 680 N.W.2d 314, 324).  A blood draw constitutes a search of the person such that the State must obtain a warrant or act under an exception to the warrant requirement.  *See Missouri v. McNeely*, ___ U.S. ___, 133 S. Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013); *Fierro*, 2014 S.D. 62, ¶ 16, 853 N.W.2d at 240.

[¶7.]       The State asserts it was not required to obtain a warrant to draw Medicine's blood because Medicine expressly consented to the blood draw.[3] "[C]onsent to conduct a search satisfies the Fourth Amendment, thereby removing the need for a warrant or even probable cause."  *Fierro*, 2014 S.D. 62, ¶ 18, 853 N.W.2d at 241 (quoting *State v. Akuba*, 2004 S.D. 94, ¶ 12, 686 N.W.2d 406, 412) (internal quotation mark omitted).  "[W]here the validity of a search rests on

---

3.      The State does not rely on SDCL 32-23-10, which we recently held "does not provide an exception to the search warrant requirement in South Dakota[.]" *Fierro,* 2014 S.D. 62, ¶ 23, 853 N.W.2d at 243.

consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given . . . ." *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324, 75 L. Ed. 2d 229 (1983). In determining whether the State has met this burden, we consider the totality of the circumstances. *Akuba*, 2004 S.D. 94, ¶ 12, 686 N.W.2d at 412. "In viewing the totality of the circumstances, we consider the characteristics of the accused: age, maturity, education, intelligence, and experience. We also consider the conditions wherein the consent was obtained, including the officer's conduct and the duration, location, and time of the event." *State v. Castleberry*, 2004 S.D. 95, ¶ 9, 686 N.W.2d 384, 387 (citing *United States v. Watson*, 423 U.S. 411, 424, 96 S. Ct. 820, 828, 46 L. Ed. 2d 598 (1976)). A defendant's knowledge of his right to refuse consent is also relevant to, but not necessary for, an ultimate finding of voluntariness. *Id.*

[¶8.]        A number of circumstances suggest Medicine's consent was voluntary. Medicine was 30 years old at the time of his arrest. He appeared to be of ordinary intelligence and informed Officer Neisen that he had previously obtained his GED. Officer Neisen conducted himself professionally and cordially. The traffic stop itself occurred on a public street at 8:06 p.m., lasted less than 20 minutes, and approximately 44 minutes elapsed between the stop and the blood draw. Additionally, the State points out that Medicine had several previous encounters with law enforcement.[4]

---

4.    The contribution of Medicine's past experience with law enforcement to the totality of the circumstances in the present case is somewhat limited as neither party has presented evidence of similarity between Medicine's prior encounters with law enforcement and his encounter with Officer Neisen.

[¶9.] Nevertheless, the circuit court found that Medicine did not know, and was not advised, that he had the right to refuse a blood test or that the State would be required to obtain a warrant if he refused. The court further found that Medicine believed he was required to give a blood sample. The court based its findings on Officer Neisen's testimony, Medicine's testimony, and the court's examination of the DUI advisement card. "When a court 'bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong [because] the court had the opportunity to observe the demeanor of the witnesses.'" *Id.* ¶ 12, 686 N.W.2d at 388 (quoting *United States v. Sutton*, 850 F.2d 1083, 1086 (5th Cir. 1988)). After reviewing the oral testimony presented to the court, we see nothing to suggest the court clearly erred in its factual findings.

[¶10.] A review of the DUI advisement card further supports the circuit court's findings. The second sentence of the card reads, "SDCL 32-23-10 provides that any person who operates a vehicle in this state *has consented* to the withdrawal of blood or other bodily substance and chemical analysis." (Emphasis added.) Thus, Officer Neisen told Medicine that he had already consented to a blood draw by operation of law. Furthermore, the third sentence of the card reads, "I request that you *submit* to the withdrawal of your _____ (blood, breath, bodily substance)." (Emphasis added.) Although the State suggests this sentence should be viewed as a second request for *consent* (in addition to the fifth sentence), we are unconvinced. The word *consent* is defined as: "To give assent, as to the proposal of another; agree." *The American Heritage College Dictionary* 296 (3d ed. 1997). In contrast, the word *submit* is defined as: "To yield or surrender (oneself) to the will or

authority of another." *Id.* at 1353. In essence, Officer Neisen informed Medicine that he had already granted authority to the State to draw his blood, then reinforced that assertion by asking Medicine to surrender to the authority he purportedly had previously granted.[5] Although the card's fifth and final sentence did ask for Medicine's *consent* to draw his blood, this is not enough to leave us "with a definite and firm conviction that a mistake has been committed." *Gartner*, 2014 S.D. 74, ¶ 8, 855 N.W.2d at 850 (quoting *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222). Therefore, the circuit court did not clearly err in finding that Medicine did not know he had the right to refuse consent and that he actually believed he was required to give a blood sample.

[¶11.]     In addition to supporting the circuit court's finding that Medicine did not know he had the right to refuse a blood test, the language of the DUI advisement card is also relevant to our totality-of-the-circumstances analysis in

---

5.     We think a careful reading of SDCL 32-23-10 and SDCL 32-23-10.1 supports this ordinary language. SDCL 32-23-10 states, in relevant part:

> Any person who operates any vehicle in this state is considered to have given *consent* to the withdrawal . . . and chemical analysis of the person's blood . . . to determine the amount of alcohol in the person's blood . . . . The arresting law enforcement officer may, subsequent to the arrest of any operator for a violation of § 32-23-1, require the operator to *submit* to the withdrawal of blood . . . as evidence.

(Emphasis added.) Standing alone, this statute suggests that the Legislature contemplated a difference between *consent* and *submit*. SDCL 32-23-10.1 reinforces this conclusion, stating: "If a person refuses to *submit* to chemical analysis of the person's blood . . . or allow the withdrawal of blood . . . as provided in § 32-23-10, and that person subsequently stands trial for violation of § 32-23-1 or § 32-23-21, such refusal may be admissible into evidence at the trial." If *consent* and *submit* were meant to have the same meaning, SDCL 32-23-10.1 would suggest a person has the power to withhold *consent* to a blood draw—a reading clearly contradicted by SDCL 32-23-10.

another respect: the DUI advisement card is evidence of coercion. "[T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973). "[A]ccount must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Id.* at 229, 93 S. Ct. at 2049. The State cannot meet its burden of proving voluntary consent "by showing a mere submission to a claim of lawful authority." *Royer*, 460 U.S. at 497, 103 S. Ct. at 1324. In *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), for example, law enforcement officers went to a defendant's residence and informed his grandmother, the owner of the property, that they possessed a warrant to search the premises. *Id.* at 546-48, 88 S. Ct. at 1790-91. She replied, "Go ahead[.]" *Id.* at 546, 88 S. Ct. at 1790 (internal quotation marks omitted). In invalidating the search, the Supreme Court held, "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Id.* at 549, 88 S. Ct. at 1792. The same is true when "the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all." *Id.* at 549-50, 88 S. Ct. at 1792.

[¶12.]     Nevertheless, the State argues *Bumper* is inapplicable here. According to the State, Officer Neisen did not tell Medicine he was required to give a blood sample, nor did Officer Neisen claim to have a warrant; rather, the State claims Officer Neisen merely informed Medicine of SDCL 32-23-10. There are several problems with this assertion. First, as we have already discussed, the plain

meaning of the words *consent* and *submit* undermine the State's assertion that the second and third sentences of the DUI advisement card did not operate as a communicated mandate. Second, because consent is an exception to the warrant requirement, an officer's assertion that a defendant has already consented is functionally equivalent to an assertion that the officer possesses a warrant—both claims are assertions that the officer has authority to conduct a search. Thus, when a law enforcement officer acts with "presumed authority . . . , [a defendant's] conduct complying with official requests cannot . . . be considered free and voluntary." *See Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 329, 99 S. Ct. 2319, 2326, 60 L. Ed. 2d 920 (1979).

[¶13.] Third, the State's claim that the DUI advisement card's second sentence was not misleading because its language is taken from SDCL 32-23-10 is logically dependent on the language of SDCL 32-23-10 not being misleading. As the State said, "This claimed 'misrepresentation' is in fact taken from the language contained in SDCL 32-23-10[.]" However, the State's assertion that SDCL 32-23-10 "was not invalidated in *Fierro*" does nothing to explain the logical inconsistency between our holding in that case and the State's position in this case. In *Fierro*, we held that SDCL 32-23-10 is not an exception to the warrant requirement and reiterated, "[T]he Legislature cannot enact a statute that would preempt a citizen's constitutional right, such as a citizen's Fourth Amendment right." 2014 S.D. 62, ¶ 23, 853 N.W.2d at 243. Although we did not hold SDCL 32-23-10 invalid per se,[6] *see id.* ¶ 27 n.6, 853 N.W.2d at 244 n.6, our holding certainly recognized as invalid

---

6. The remaining validity of SDCL 32-23-10, if any, is not before us.

the invocation of SDCL 32-23-10 for the purpose of eliciting express "consent" by declaring such has already been impliedly given. Whether fabricated or an honest recitation of purported statutory authority, "[w]hen a law enforcement officer claims authority to search [an individual], he announces in effect that the [individual] has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *See Bumper*, 391 U.S. at 550, 88 S. Ct. at 1792.

[¶14.] We are not convinced that the DUI advisement card's fifth sentence was enough to counteract the coercive effect of the card's second and third sentences. As noted above, the card's second and third sentences served as two assertions—one explicit and the other implicit—that the State already possessed the authority to draw Medicine's blood, whether he allowed it to or not. Although the State is not normally required to prove a defendant knew he had the right to refuse consent, the Supreme Court cases from which this rule derives are materially distinguishable from the present case: each involved officer conduct that did not disclose the subject's right to withhold consent, but also did nothing to actively suggest the subject had no such right. *See United States v. Drayton*, 536 U.S. 194, 197-99, 122 S. Ct. 2105, 2109-10, 153 L. Ed. 2d 242 (2002); *Ohio v. Robinette*, 519 U.S. 33, 35-36, 117 S. Ct. 417, 419, 136 L. Ed. 2d 347 (1996); *Schneckloth*, 412 U.S. at 220, 93 S. Ct. at 2044. In contrast, the DUI advisement card at issue in the present case actually contributed to Medicine's belief that he was required to give a blood sample. When the State causes or actively contributes to a defendant's ignorance—as opposed to merely declining to take steps to remedy ignorance—the

State may mitigate the impact of the relevant coercive conduct on the totality of the circumstances by proving the defendant knew he had a right to refuse consent. Asking Medicine if he consented to a blood draw, which implied he had the right to decline, did not effectively retract Officer Neisen's explicit and implicit assertions that Medicine possessed no such right.

[¶15.] We also find relevant the fact that Medicine had already been placed under arrest at the time he gave consent. The Supreme Court has suggested that the condition of being in custody, when combined with other relevant circumstances, can invalidate a consent. *See Watson*, 423 U.S. at 424, 96 S. Ct. at 828 ("[T]he fact of custody *alone* has never been enough *in itself* to demonstrate a coerced confession or consent to search." (emphasis added)). In the related context of confessions, *see Schneckloth*, 412 U.S. at 223-24, 93 S. Ct. at 2045-46, "any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime[,]" *McDonough v. Weber*, 2015 S.D. 1, ¶ 25, 859 N.W.2d 26, 38 (quoting *State v. Thompson*, 1997 S.D. 15, ¶ 23, 560 N.W.2d 535, 540 (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714, 50 L. Ed. 2d 714 (1977))). Here, not only was Medicine in custody, but Officer Neisen had actually placed Medicine under arrest, handcuffed him, placed him in a police vehicle, twice asserted the State's authority to draw his blood, and then asked for consent. Officer Neisen did not mitigate this "coercive environment[,]" *Mathiason*, 429 U.S. at 495, 97 S. Ct. at 714, by informing

Medicine of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), prior to obtaining Medicine's consent.[7]

[¶16.]     The totality of the circumstances suggests Medicine's response to Officer Neisen's recitation of the DUI advisement card did not constitute a valid consent. Officer Neisen twice asserted the State had authority to draw Medicine's blood. The coercive effect of these assertions was compounded by the inherently coercive environment of a custodial arrest. Against this backdrop, Medicine lacked knowledge that he had the right to refuse consent; instead, he thought he was required to give a blood sample. Considering the totality of the circumstances, we are convinced Medicine's "consent was not his own 'essentially free and unconstrained choice' because his 'will had been overborne and his capacity for self-determination critically impaired.'" *Watson*, 423 U.S. at 424, 96 S. Ct. at 828 (quoting *Schneckloth*, 412 U.S. at 225, 93 S. Ct. at 2047). Thus, the circuit court did not err in granting Medicine's motion.

---

7.     An arresting officer is not required to administer a *Miranda* warning to an individual prior to requesting consent for a search, and the failure to give such a warning does not invalidate consent. *See Schneckloth*, 412 U.S. at 246-47, 93 S. Ct. at 2058. However, advising an arrestee that he has the right to remain silent might, in some cases, serve to mitigate the otherwise coercive nature of custodial questioning.

Officer Neisen testified at the motion hearing that he read a *Miranda* warning to Medicine. However, we are unable to locate such warning in the visual and audio recording of his encounter with Medicine, which begins prior to the traffic stop and concludes several minutes after Officer Neisen's recitation of the DUI advisement card. Therefore, such warning necessarily did not occur prior to Officer Neisen obtaining consent from Medicine.

**Conclusion**

[¶17.] Consent is not valid unless it is "the product of an essentially free and unconstrained choice by its maker[.]" *Schneckloth*, 412 U.S. at 225, 93 S. Ct. at 2047 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 1879, 6 L. Ed. 2d 1037 (1961)). We do not hold today that the language of the DUI advisement card at issue necessarily precludes voluntary consent. Rather, we continue to consider the totality of the circumstances. In this case, the coercive nature of the DUI advisement card, the inherently coercive environment of a custodial arrest, and Medicine's lack of knowledge regarding his right to refuse consent outweigh the other circumstances present. Thus, we conclude Medicine's consent was involuntary; the circuit court did not err in granting Medicine's motions. We affirm.

[¶18.] ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.