#27916-a-SLZ
**2017 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SUEELLAN G. KLINE,                         Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY J. STOLTENBURG
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                             and appellee.


TIM HOGAN of
Ribstein & Hogan Law Firm
Brookings, South Dakota                    Attorneys for defendant
                             and appellant.


\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 13, 2017
OPINION FILED **03/08/17**

#27916

ZINTER, Justice

[¶1.] Douglas Strong, a parolee, and his girlfriend Sueellan Kline lived together in a motel room. Strong's parole agent Connie Johnson came to the room to obtain a urine sample from Strong. When the sample field tested positive for methamphetamine, Johnson removed Strong from the room and detained him. Johnson then reentered the room and asked Kline if there were any drugs or drug paraphernalia in the room. Kline produced a methamphetamine pipe from her purse and handed it to Johnson, who subsequently turned it over to law enforcement. The pipe was used to obtain a search warrant for Kline's urine, which tested positive for methamphetamine and amphetamine. The circuit court denied Kline's motion to suppress the evidence, and Kline was convicted of ingestion of a controlled substance. She appeals the denial of the suppression motion. We affirm.

*Facts and Procedural History*

[¶2.] Kline, her five children, and Strong resided together in a motel room in Brookings. Kline knew that Strong was on parole. Parole Agent Johnson, accompanied by Deputy Sheriff Charles Umberger, went to the motel room to obtain a urine sample from Strong in accordance with Strong's parole agreement. Strong's urine field-tested positive for methamphetamine, and he admitted to smoking the substance. Johnson removed Strong from the room and detained him in the hallway, away from Kline's children. There is a dispute whether the door was completely closed when Johnson, Umberger, and Strong left the room. Johnson then asked Strong whether there were any drugs or drug paraphernalia in the room. Strong said there were not.

-1-

[¶3.] After two to three minutes, Johnson reentered the room without knocking or requesting permission. She then asked Kline if there were any drugs or drug paraphernalia in the room. Johnson informed Kline that the "room was open for search and seizure under [Strong's] parole" and that Kline should be honest with her.[1] In response, Kline removed a methamphetamine pipe from her purse and handed it to Johnson. Johnson left the room and turned the pipe over to Umberger, who observed a white powdery residue on the pipe. Strong stated the pipe was his, and he later admitted that both he and Kline had smoked methamphetamine.

[¶4.] Umberger used the pipe and Strong's admission to obtain a search warrant for a urine sample from Kline. Kline provided the sample, which tested positive for methamphetamine and amphetamine. Kline was subsequently indicted for unauthorized ingestion of a controlled substance.

[¶5.] Kline moved to suppress all of the evidence, arguing that it was obtained as the result of an illegal search in violation of the Fourth Amendment to the United States Constitution and Article VI, section 11, of the South Dakota Constitution. The circuit court denied the motion, ruling that Johnson had reasonable suspicion to search the room and that Kline voluntarily produced the pipe. Kline stipulated to the facts at a court trial and was convicted and sentenced to probation. She appeals, alleging that Johnson unlawfully reentered Kline's

---

1. According to Kline, Johnson threatened to bring search dogs if Kline did not cooperate. Kline also alleged that Johnson told Kline that she would lose her children if she did not cooperate but that she would not be in trouble or go to jail if she cooperated. Johnson admitted she did inform Kline of the potential to bring drug dogs in, but she denied stating Kline would lose her children or that Kline would not get in any trouble.

#27916

residence without a warrant after having removed Strong; that any authority to search the residence did not extend to Kline's purse; and that Kline did not voluntarily consent to a search of her purse.[2]

*Decision*

[¶6.]        Kline first argues that Johnson had no authority to search the motel room because Kline had a reasonable expectation of privacy in the room—which was her residence—even though she shared it with a parolee. It is well settled that a parolee has a diminished expectation of privacy in their residence. *State v. Kottman*, 2005 S.D. 116, ¶ 10, 707 N.W.2d 114, 118. Parole agents may search a parolee's residence if they have reasonable suspicion that the parolee has committed a crime. *Id.* ¶ 15, 707 N.W.2d at 120-22; *see also United States v. Knights*, 534 U.S. 112, 121, 122 S. Ct. 587, 592-93, 151 L. Ed. 2d 497 (2001). We have not, however, determined when the parolee's diminished expectation of privacy extends to third parties who cohabit with the parolee. Kline acknowledges that based on the field test of Strong's urine, Johnson could have immediately searched the residence without a warrant because Johnson had reasonable suspicion that Strong committed a crime. But Kline contends that once Johnson and Umberger removed Strong and detained him, Johnson could not reenter without a warrant. *See State v. Bowker*, 2008 S.D. 61, ¶ 18, 754 N.W.2d 56, 62-63 (noting that the heightened expectation of privacy in one's residence generally demands that law enforcement obtain a warrant prior to entering a home or dwelling).

---

2.    We review a motion to suppress evidence based on the violation of a constitutional right de novo. *State v. Medicine*, 2015 S.D. 45, ¶ 5, 865 N.W.2d 492, 495. The circuit court's factual findings are reviewed for clear error. *Id.*

-3-

[¶7.]        However, the circuit court found that Johnson's reentry was a continuation of the parole search rather than an independent law enforcement investigation that may have required a warrant. The evidence supports this finding. Johnson only removed Strong from the room to detain him outside the view of the children. Johnson subsequently remained outside the room for only two to three minutes to briefly question Strong. Then, following the questioning, Johnson reentered the room to follow up on Strong's admitted use of controlled substances. Kline's argument about the nature of the search is not supported.

[¶8.]        We next determine whether the parole search was unlawful as against Kline. Because the motel room was her home, we agree that Kline had the expectation of privacy necessary to challenge the search. *See State v. Thunder*, 2010 S.D. 3, ¶ 16, 777 N.W.2d 373, 378 (stating that a reasonable expectation of privacy requires a defendant to have "an actual subjective expectation of privacy in the area searched" and that "society is prepared to recognize that expectation of privacy as reasonable"). However, Kline's Fourth Amendment rights were impacted by her cohabitation with Strong, a parolee who had common authority over the residence and had substantially "sacrificed" his Fourth Amendment rights. *See Kottman*, 2005 S.D. 116, ¶¶ 10, 15, 707 N.W.2d at 118, 120-22; *State v. West*, 517 N.W.2d 482, 490-91 (Wis. 1994). When a parolee's residence is subject to a parole search and the residence is shared with a third party, the "parole search may extend to all parts of the premises to which the probationer or parolee has common authority." *West*, 517 N.W.2d at 491-92; *see also People v. Schmitz*, 288 P.3d 1259, 1266 (Cal. 2012) (noting that a search of a probationer's residence is limited to

areas where "the probationer has complete or joint control over"). "So long as the authorities have reasonable cause for the search and a reasonable basis for believing that the premises or items searched belong to or are used in common by the parolee, there is no violation of the Fourth Amendment either against the parolee or against the nonparolee." *West*, 517 N.W.2d at 492. Therefore, we affirm the circuit court's conclusion that Johnson lawfully reentered the motel room without a warrant to conduct a parole search based on reasonable suspicion.[3]

[¶9.] Kline next argues that even if Johnson lawfully reentered the room to conduct a parole search, Johnson could not lawfully search Kline's purse. However, Johnson did not search Kline's purse. Upon reentering the room, Johnson only asked if there were drugs in the *room*, and she informed Kline that the "*room* was open for search and seizure under [Strong's] parole." (Emphasis added.) Additionally, Kline responded to Johnson's question regarding the room by retrieving a methamphetamine pipe from her purse. Therefore, the issue in this case involves the question of consent rather than authority to search the purse. The remaining question is whether Kline voluntarily consented to production of the pipe.

[¶10.] "Consent to conduct a search satisfies the Fourth Amendment, thereby removing the need for a warrant or even probable cause." *State v. Medicine*, 2015 S.D. 45, ¶ 7, 865 N.W.2d 492, 495. Consent to search must be voluntary and free of coercion. To determine whether consent was voluntary, we consider the

---

3. Our holding does not, as Kline claims, mean that anyone who associates with a parolee will be subject to warrantless searches. Only areas that a parolee has common authority over may be subject to search.

totality of the circumstances. *Id.* Specifically, we consider the accused's age, maturity, education, intelligence, and experience; "the conditions wherein the consent was obtained, including the officer's conduct and the duration, location, and time of the event"; as well as whether the defendant was aware of his or her right to consent. *Id.* ¶ 7, 865 N.W.2d at 496. When an officer asserts authority to search such that an individual feels they have no right to resist the search, the coercive effect of this show of authority may render the consent involuntary. *Bumper v. North Carolina*, 391 U.S. 543, 550, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968).

[¶11.] Kline contends that her consent was involuntary because she believed she had no right to resist the search after Johnson stated that the room was subject to a parole search. As previously noted, however, Johnson correctly declared that she had the right to search the room without a warrant. Additionally, Johnson did not claim any authority to search Kline's purse. She only asked for Kline's cooperation. We therefore conclude that Johnson's show of authority to search the room could not have rendered Kline's consensual production of the pipe involuntary.

[¶12.] Kline, however, also claims that she was very susceptible to coercion. She testified that she has a low IQ and a learning disability. She also stated that she did not know she could refuse to consent and believed she was coerced. However, the circuit court rejected these factual claims of susceptibility to coercion, noting that her testimony was not credible. We do acknowledge that Kline's boyfriend had just been detained, and Johnson had informed Kline that she had the lawful authority to search Kline's residence. However, the circuit court found that Johnson did not threaten Kline with physical force or detention. The court also

found that Kline's recollection of the events was clouded by her recent drug use and self-interest. Ultimately, the record indicates that rather than objecting to Johnson's presence or authority to search, Kline chose to assist Johnson with the parole search by voluntarily producing the methamphetamine pipe from her purse. *Cf. State v. Sheehy*, 2001 S.D. 130, ¶ 12, 636 N.W.2d 451, 454. "When a court 'bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong because the court had the opportunity to observe the demeanor of the witnesses.'" *Medicine*, 2015 S.D. 45, ¶ 9, 865 N.W.2d at 496 (quoting *State v. Castleberry*, 2004 S.D. 95, ¶ 12, 686 N.W.2d 384, 388). The circuit court did not clearly err in finding that Kline voluntarily consented to production of the pipe.

[¶13.] We hold that Johnson lawfully reentered the residence and that Kline voluntarily consented to production of the methamphetamine pipe. Because the evidence was not obtained in violation of the Fourth Amendment, the circuit court properly denied Kline's motion to suppress.

[¶14.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.