EPPICH, Judge:
¶ 1 Alfonso De Anda III, appeals his convictions and sentences for two counts each of aggravated driving under the influence and aggravated driving with a blood alcohol concentration of .08 or more. He argues the trial court should have suppressed the results of a test of his blood.[1] Because we find no error, we affirm.
Factual and Procedural Background
¶ 2 We review the evidence presented at the suppression hearing "in the light most favorable to sustaining the court's ruling, deferring to the court's determination of facts and witness credibility but reviewing de novo its legal conclusions." State v. Waller , 235 Ariz. 479, ¶ 5, 333 P.3d 806, 810 (App. 2014) (citation omitted). After a Tucson police officer stopped De Anda while he was driving, De Anda exhibited signs of alcohol impairment and was arrested. Pursuant to Arizona's implied-consent statute, A.R.S. § 28-1321, another officer advised De Anda as follows:
Arizona law states that a person who operates a motor vehicle at any time in this state gives consent to a test or tests of blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content. The law enforcement officer is authorized to request more than one test and may choose the types of tests.
If the test results are not available, or indicate an alcohol concentration of 0.08 or above (0.04 or above in a commercial vehicle,) or indicate any drug defined in ARS 13-3401 or its metabolite without a valid prescription, then your Arizona driving privilege will be suspended for not less than 90 consecutive days.
*672 If you refuse, do not expressly agree to submit to, or do not successfully complete the tests, your Arizona driving privilege will be suspended. The suspension will be requested for 12 months, or for two years if you've had a prior implied-consent refusal within the last 84 months.
Will you submit to the tests?
De Anda agreed, and the officer drew his blood and submitted it for forensic analysis. De Anda was subsequently charged with the four counts described above.
¶ 3 Before trial, De Anda filed a motion to suppress all evidence obtained from the blood test, contending that his consent to submit to the test had been coerced by the officer's advisement. Specifically, he argued the officer should have given him the option to submit or refuse testing prior to explaining the penalties associated with refusal. After a hearing, the trial court denied his motion and the results of the blood test were admitted at trial. De Anda was convicted of all four counts and sentenced to concurrent terms of imprisonment, the longest of which is four months, followed by concurrent, five-year terms of probation. We have jurisdiction over De Anda's appeal pursuant to A.R.S. §§ 13-4031 and 13-4033(A)(1).
Implied Consent
¶ 4 The sole issue before us is whether the trial court erred in denying De Anda's motion to suppress. De Anda argues the procedure provided by statute and approved in State v. Valenzuela , 239 Ariz. 299, ¶ 29, 371 P.3d 627, 636 (2016), required the advising officer to give him an opportunity to consent to testing prior to advising him of the consequences of refusal. See § 28-1321(B). He further argues that the officer's failure to follow this procedure rendered his consent to the test involuntary. We review the court's denial of De Anda's motion "for abuse of discretion if it involves a discretionary issue, but review constitutional issues and purely legal issues de novo." State v. Gay , 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007) (citation omitted).
¶ 5 We recently determined Arizona's implied-consent statute does not require the state to follow the procedure De Anda suggests. Diaz v. Bernini , No. 2 CA-SA 2017-0081, 244 Ariz. 417, ¶ 18, 419 P.3d 950, ----, 2018 WL 1783113 (Ariz. Ct. App. Apr. 12, 2018). We further concluded that the type of advisement given to De Anda does not violate Arizona law. Id. ¶¶ 2, 20. But Diaz dealt with a breath test, and we did not address the additional Fourth Amendment concerns associated with a blood test. Id. ¶¶ 6-7 & n.5 ; see also Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 2184-85, 195 L.Ed.2d 560 (2016) (blood tests are physically intrusive and, unlike breath tests, do not fall within the search-incident-to-arrest exception to the general warrant requirement); Schmerber v. California , 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test is a Fourth Amendment search). We therefore must determine whether the implied-consent advisement given to De Anda rendered his consent invalid under the Fourth and Fourteenth Amendments. See Schneckloth v. Bustamonte , 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[T]he Fourth and Fourteenth Amendments require that a consent not be coerced.").
¶ 6 "Although the Fourth Amendment generally prohibits warrantless searches, they are permitted if there is free and voluntary consent to search." Valenzuela , 239 Ariz. 299, ¶ 1, 371 P.3d at 629 (citations omitted). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances" surrounding the encounter. Schneckloth , 412 U.S. at 227, 93 S.Ct. 2041.
¶ 7 We conclude the advisement did not render De Anda's consent involuntary. Unlike Valenzuela , the officer in this case did not tell De Anda he was required to submit to a chemical test. See 239 Ariz. 299, ¶ 30, 371 P.3d at 636. Instead, the officer accurately advised De Anda of the terms of Arizona's implied-consent statute. See § 28-1321. The officer informed him not only of the administrative consequences of refusal, but also, implicitly, of his power to refuse. See *673 Schneckloth , 412 U.S. at 227, 93 S.Ct. 2041 ("knowledge of the right to refuse consent" is a factor used in determining voluntariness). And, while the Valenzuela Court approved the procedure De Anda suggests, it also approved of the type of advisement given here, wherein a suspect is advised of the consequences of refusal prior to being asked for consent. See 239 Ariz. 299, ¶ 29, 371 P.3d at 636, citing South Dakota v. Neville , 459 U.S. 553, 555 n.2, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).
¶ 8 Aside from the order of the advisement, De Anda does not identify any facts that suggest his consent was involuntary under the totality of the circumstances surrounding his encounter with law enforcement. See Schneckloth , 412 U.S. at 227, 93 S.Ct. 2041. Accordingly, the trial court did not err in finding De Anda's consent voluntary and denying his motion to suppress.[2]
Disposition
¶ 9 De Anda's convictions and sentences are affirmed.

In his opening brief, De Anda also argued the court erred in admitting evidence that a second tube of his blood had been drawn. However, he withdrew that argument in his reply brief.

De Anda also suggests that, if the advisement rendered his consent involuntary, the good-faith exception to the general warrant requirement should not apply to these facts. Because we conclude De Anda's consent was voluntary, we do not consider whether the good-faith exception applies.