IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**ALFONSO DE ANDA III,**
*Appellant.*

————————

No. CR-18-0286-PR
Filed February 28, 2019

————————

Appeal from the Superior Court in Pima County
The Honorable Richard D. Nichols, Judge
No. CR20161614-001
**AFFIRMED**

————————

Opinion of the Court of Appeals, Division Two
244 Ariz. 471 (App. 2018)
**AFFIRMED**

————————

COUNSEL:

Joel Feinman, Pima County Public Defender, David J. Euchner (argued), Michael J. Miller, Pima County Public Defender's Office, Tucson, Attorneys for Alfonso De Anda, III

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Tanja K. Kelly (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

————————

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES PELANDER, TIMMER, BOLICK, GOULD, and LOPEZ joined.

————————

CHIEF JUSTICE BALES, opinion of the Court:

¶1        Alfonso De Anda III submitted to a blood test after he was arrested for driving under the influence.  He argues his consent was involuntary under the Fourth Amendment to the United States Constitution because, before he was asked if he would submit to the test, the police officer told him his driving privileges would be suspended if he refused. We disagree.  Unlike the officer in *State v. Valenzuela*, 239 Ariz. 299 (2016) ("*Valenzuela II*"), the officer here did not tell De Anda he was required to submit to the test, and the officer's identifying the consequences of refusal before asking whether he would submit to the testing did not in itself render De Anda's consent involuntary.  The trial court did not err in denying his motion to suppress the test results.

**I.**

¶2        A few weeks before the opinion in *Valenzuela II* issued, De Anda was stopped by police while driving and arrested because he showed signs of impairment.  At the scene of the arrest, a police officer read De Anda an "admin per se form" as follows:

> Arizona law states that a person who operates a motor vehicle at any time in this state gives consent to a test or tests of blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content.  The law enforcement officer is authorized to request more than one test and may choose the types of tests.

> If the test results are not available, or indicate an alcohol concentration of 0.08 or above (0.04 or above in a commercial vehicle,) or indicate any drug defined in ARS 13-3401 or its metabolite without a valid prescription, then your Arizona driving privilege will be suspended for not less than 90 consecutive days.

> If you refuse, do not expressly agree to submit to, or do not successfully complete the tests, your Arizona driving privilege will be suspended.  The suspension will be requested for 12 months, or for two years if you've had a prior implied consent refusal within the last 84 months.

Will you submit to the tests?

After the officer finished reading the form, De Anda agreed to submit to a test, and the officer performed a blood draw. A test of the blood revealed an alcohol concentration of 0.142. De Anda was charged with two counts each of aggravated driving under the influence ("DUI") and aggravated DUI with an alcohol concentration of 0.08 or more.

¶3            De Anda moved to suppress the blood test results. He argued that under A.R.S. § 28-1321 and *Valenzuela II*, his consent was involuntary because he was told his driving privileges would be suspended if he refused the test before he was asked if he would submit. After a hearing, the trial court denied the motion, ruling that the blood draw was voluntary, "[c]onsidering the circumstances surrounding the arrest, the language in the [admin per se form], and the question posed to the defendant regarding consent" and the "criteria set forth in *State v. Butler*, 232 Ariz. 84 (2013)." The blood test results were admitted at trial, and De Anda was convicted of the four charged DUI counts.

¶4            On appeal, De Anda again argued that the statute and *Valenzuela II* required the officer to ask if he would consent to testing before advising him of the administrative consequences of refusal. *State v. De Anda*, 244 Ariz. 471, 473 ¶ 4 (App. 2018). Rejecting these arguments, the court of appeals affirmed De Anda's convictions and sentences. *Id.* at 474 ¶ 9.

¶5            We granted review to consider the narrow question whether, in light of *Valenzuela II*, the sequence of the officer's statements in itself rendered De Anda's consent involuntary - a recurring legal issue of statewide importance.

**II.**

¶6            In addition to arguing that his consent was involuntary for Fourth Amendment purposes, De Anda in his supplemental brief and at oral argument urged the Court to hold that police officers generally should be required, as a matter of state law, to advise DUI suspects of their rights to refuse warrantless testing and to attempt to contact an attorney. Because the latter issues were not raised below, we deem them waived and decline

to address them here. *See e.g., Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405, 412 ¶ 24 (2014).

**¶7** Whether consent to a search is voluntary under the Fourth Amendment is assessed from the totality of the circumstances. *Butler*, 232 Ariz. at 87 ¶ 13. Because voluntariness is a factual question, we review the trial court's finding for an abuse of discretion. *Id.* at 88 ¶ 19. "We consider the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling." *Id.* at 87 ¶ 8 (quoting *State v. Hausner*, 230 Ariz. 60, 70 ¶ 23 (2012)).

**¶8** DUI investigations involve the interplay of the Fourth Amendment and Arizona's implied consent statute, § 28-1321. Subsection A of the statute declares that "[a] person who operates a motor vehicle in this state gives consent" to certain testing if arrested for driving while impaired. § 28-1321(A). This "consent," however, does not by its terms authorize warrantless testing of arrestees. *Butler*, 232 Ariz. at 88 ¶ 17. Instead, subsection B directs the officer "to ask the arrestee to submit to the test, and the arrestee may then refuse by declining to expressly agree to take the test." *Id.* (citing § 28-1321(B)). "If the arrestee refuses, the statute specifies that a warrant is required to administer the test and the arrestee shall have his license suspended." *Id.* (citing § 28-1321(D)).

**¶9** "[I]ndependent of § 28-1321, the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw." *Id*. ¶ 18. Thus, the "implied" consent referenced in § 28-1321(A) does not itself satisfy "the Fourth Amendment's requirement that consent be voluntary." *Id.* ¶ 17. Instead, an arrestee's consent must be "freely and voluntarily given." *Valenzuela II*, 239 Ariz. at 302 ¶ 11. In *Valenzuela II*, we recognized that consent is not voluntary "if the subject of a search merely acquiesces to a claim of lawful authority." *Id.* ¶ 1 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)).

**¶10** *Valenzuela II* considered whether a driver arrested for DUI had voluntarily consented to testing "after a police officer advised him that 'Arizona law requires you to submit'" to tests selected by the officer. *Id*. ¶ 2. We held "that showing only that consent was given in response to this admonition fails to prove that an arrestee's consent was freely and voluntarily given." *Id.* The Court expressly noted, however, "[w]e do not hold today that § 28-1321 violates the Fourth Amendment or that officers

must cease advising arrestees about the law's requirements and the civil consequences for refusal." *Id.* at 308 ¶ 28.

¶11 We explained that "[a] law enforcement officer can invoke the implied consent law without infringing on an arrestee's Fourth Amendment rights by following the procedure set forth in § 28-1321(B)." *Id.* ¶ 29. That is, the officer first asks if the arrestee will consent, which may obviate the need to explain the statutory consequences for refusing consent. *Id.* But if the arrestee refuses to consent, the officer should advise the arrestee of the consequences provided in § 28-1321(B), "and then ask again whether the arrestee will consent to testing." *Id.* Alternatively, the Court noted that "the state might revise its implied consent admin per se form to mirror one used in South Dakota, which provides the arrestee with a clear choice whether to submit to testing or refuse consent." *Id.* (citing *South Dakota v. Neville*, 459 U.S. 553, 555 n.2 (1983)).

¶12 De Anda argues that his consent given in response to the admin per se form here was involuntary under *Valenzuela II* because he was not first asked if he would consent to testing and the form did not otherwise present him with "a clear choice whether to submit to testing or refuse consent." He notes that the form begins by declaring, "Arizona law states that a person who operates a motor vehicle at any time in this state gives consent to a test or tests . . . for the purpose of determining alcohol concentration or drug content" - accurately paraphrasing the first sentence of § 28-1321(A). He contends that both § 28-1321(B) - which states that "a violator shall be requested to submit to and successfully complete any test or tests prescribed by [§ 28-1321(A)] . . . and if the violator refuses, the violator shall be informed that the violator's license or permit to drive will be suspended . . ." - and *Valenzuela II* contemplate the arresting officer will ask if the arrestee will consent before describing the consequence for refusing. Thus, De Anda contends that the admin per se form read to him was inherently coercive because it began by saying that state law provides that operators consent to testing and then describes the administrative penalty for refusing a test before asking if the arrestee will submit.

¶13 De Anda also notes that while *Valenzuela II* was pending before this Court, the admin per se form was revised (to the form used here) such that officers no longer told arrestees that they were required to submit to testing, but after De Anda's arrest and the issuance of our opinion, the form was revised yet again so that officers now first ask if the arrestee will

submit to testing.  Finally, De Anda urges us to follow *State v. Medicine*, 865 N.W.2d 492 (S.D. 2015), which held that an arrestee had not voluntarily consented to testing after being read an advisement that began by saying that under the state's implied consent law, vehicle operators consent to testing; then stated the officer requests the arrestee to submit to testing; and ended by asking if the arrestee consents.  *Id.* at 496-97 ¶ 10.

**¶14**　　　　We are not persuaded that the admin per se form read to De Anda by its terms "coerce[d] consent by stating or implying that officers have lawful authority, without a warrant, to compel samples of blood, breath, or other bodily substances."  *Valenzuela II*, 239 Ariz. at 308 ¶ 28.  Although De Anda was told, accurately, that Arizona law states that a person operating a vehicle gives consent to certain testing if arrested for DUI, the form did not state or imply the officer could compel him to provide samples.  Nor did the admin per se form - unlike the one used in *Valenzuela II* - repeatedly state that Arizona law required De Anda to submit to testing.  Instead, the form implicitly acknowledged De Anda could refuse by asking whether he would submit, although correctly stating that his driving privileges would be suspended if he did not expressly agree to testing.

**¶15**　　　　*Valenzuela II* did not suggest that warning arrestees of the consequences of refusal before asking if they will consent is itself inherently coercive.  We acknowledged that arrestees can be told of the consequences, and that the "difficulty" of deciding whether to submit "does not make the decision coerced." *Id*. ¶ 29.  We also approvingly referenced South Dakota's implied consent form that itself identified the consequences of refusal before asking the arrestee to submit to testing.  *Id.* (citing *Neville*, 495 U.S. at 555 n.2).  Moreover, if it is not coercive for an officer to tell an arrestee that refusal will result in a license suspension after the arrestee initially refuses but before again requesting consent, it is difficult to understand why first identifying the consequences of refusal would imply that any subsequent assent is involuntary.

**¶16**　　　　Although *Valenzuela II* recognized ways that police officers can invoke the implied consent law without violating the Fourth Amendment, *id.* at 308 ¶ 28, we did not state that any departure from those procedures would alone show that consent was involuntary.  Instead, *Valenzuela II* expressly held that the voluntariness of consent given after an admonition turns on the totality of the circumstances, even when consent follows an officer's assertion of lawful authority to search.  *Id.* at 305-06 ¶21.

**¶17**         *Medicine* does not avail De Anda, because it too embraces a totality of the circumstances approach.  *See* 865 N.W.2d at 500 ¶ 17.  There, the South Dakota Supreme Court declined to hold that the language in the advisement card "necessarily precludes voluntary consent," *id.*, and instead concluded, consistent with the trial court's ruling, that the defendant's consent was involuntary under the circumstances, including the language of the advisement, the custodial arrest, and the arrestee's lack of knowledge of his right to refuse consent.  There, unlike in this case, consent came only after the suspect was arrested, handcuffed, and placed in a police vehicle and an officer twice asserted authority to perform the test.  *Id.* at 499 ¶ 15.

**¶18**         Here, the admin per se form read to De Anda did not in itself establish that his consent was voluntary – a fact recognized by the trial court in considering the totality of the circumstances in denying the motion to suppress – but it also did not alone render any resulting consent involuntary.  Combined with other circumstances, the form's use, like the form used in *Medicine*, might lead a trial court to reasonably find that consent was not freely and fairly given.  To help avoid this prospect, the state would be well advised to use the more recently revised version of the implied consent form, as amended after *Valenzuela II*, to follow the procedure set forth in § 28-1321(B) or otherwise provide "the arrestee a clear choice whether to submit to testing or refuse consent."  *Valenzuela II*, 239 Ariz. at 308 ¶ 29.

### III.

**¶19**         The trial court did not abuse its discretion by finding that De Anda voluntarily consented to the blood draw and denying the motion to suppress.  We affirm the opinion of the court of appeals and De Anda's convictions and sentences.